All right, our first case this afternoon is number 21-2294, United States v. Stacey Gallman. Mr. Donohue? Good afternoon, Your Honor, and may it please the Court, I ask to reserve three minutes of my time. Granted. Your Honors, I'll begin with the first of two issues raised, the closure of two stages of trial to the public. The first closure came the morning after a jury had been selected and sworn, and right before preliminary instructions and opening arguments went forward. During this conference, the judge ruled that the defense would not be permitted to confront two police witnesses with a complaint of racial profiling that had been lodged in another matter. It also became clear during this conference that this was actually the first time the subject matter of this complaint had ever been disclosed to the defense. Meanwhile, my client, Mr. Gallman, alerted people during this conference that he planned to testify, he would admit the prior conviction, and he would answer any questions the government had about it. The second closure came a couple hours later during a lunchtime recess, and during it, the AUSA and the judge conducted a voir dire examination of a police representative concerning a second complaint against the testifying officers. As I understand the briefs, the government contests that there even was a first closure, right? So how do we, how do we just have a sealed transcript? How do we know? There are two aspects of the record that confirm both proceedings were sealed. As to the closure that the government does not dispute, what the record shows at pages 182 to 183 is the moment the AUSA requested to seal the proceedings, the district judge immediately and almost reflexively turned off the video stream, indicating that the judge understood sealed to mean not streamed. At that time, there was no confusion on the part of any counsel that that's what sealed meant. The other aspect of the record that confirms both proceedings were sealed is the subject matter they concerned. Now, throughout the proceedings, the government had indicated that it believed complaints of police misconduct should remain confidential. Both proceedings concern different police complaints. And one aspect of the record that the briefing may not have fully excavated is that the day before the closures, the AUSA had submitted ex parte, the only documentation of the racial profiling investigation. And that remains sealed at this time. Mr. Donohue, even if there was a closure on both occasions, there was no objection. So we need to review this under the plain air standard, correct? Correct. OK. How can you distinguish this case from our court's opinion in Williams? Well, I think this case in Williams are polar opposites, really. And if there's ever a case where the fourth prong is going to favor relief, it seems it would be this one. In Williams, you had a two month. Why is that? Why would that be? Because the costs of inaction greatly exceed the costs to the fairness, integrity and public reputation. This is a short trial. There's a single disputed factual issue to decide at it. The testimony consists exclusively in police witnesses and police video that can readily be presented again. And it won't last more than two, three, four days. In Williams, there was a two month trial, a 12 defendant trial that had been conducted five years earlier and more than 100 witnesses testified. So the cost in Williams were exorbitant in terms of ordering the trial to be done over. Here they are not. Would it be a whole trial, a retrial or just a redo of the hearing that was closed? It would need to be the whole trial because just reenacting these particular conferences out of context wouldn't serve any meaningful purpose that the harm caused by this closure. What meaningful purpose would a retrial serve? I mean, it seems to me you'd be on much stronger footing if these closed proceedings or allegedly closed proceedings, but I'm granting for purposes of my question that they were both closed. They didn't yield anything of interest or of moment that would be admissible at trial, correct? Correct. It was determined that there was no admissible evidence to come from. That is the court's ruling and we have it. And that's not an issue on appeal. So it just seems to me that you'd be on much stronger footing if there had been a closed proceeding that yielded relevant evidence or was meaningful to the trial. I'm not criticizing the district judge for inquiring into it. The district judge was put in a tough spot because as you said, the government sort of sprung this potential Brady or Jiggly on material at the 11th hour, right? That's what put this into motion, right? What happened is that confusion had persisted and continued on the day before. And the judge, it seems, did take initiative to look into it further. And the way this should have worked is that the information should have come out a month early than the judge could have dealt with it and determined it before the trial even started. Right. So, so if this, if this information could have been handled pretrial, not in public, what difference does it make here if we're under plain error? How can we say that it seriously affects the fairness or integrity of the proceedings that it did have that effect? Well, I think in looking to the fourth prong or looking to what proceedings are covered, probably the fifth circuit had it right. When it said you have to look at the relationship between the issues raised and the merits of the case and the significance of the issues to the integrity of the administration of justice. And that's the Ravinsky case, 722 F second at 201. So here it's entirely correct that evidence was ruled inadmissible, but the need for this to be conducted publicly is so that observers could have seen that ruling and then considered the presentation of the case that followed in light of what was not allowed. And the significance of the ruling is not strictly whether it was legally correct. It's whether it would have been thought to be fair and just to any member of the public looking. Well, we've said, we've said that's true in the case of suppression hearings, of course, which are pretrial, but you're asking, it seems that you're asking for a pretty robust extension of that, of that doctrine. Are you not? Well, the limiting principle that this case does present is that the trial was already underway. All right. So a jury had been selected and I think what, you know, there can be close cases, but by and large, if a veneer has been assembled or a jury sworn, the court's in session and there's not been a verdict, then chances are it is a stage of trial. Does it matter how long? Yeah, absolutely. Right. But does it matter how long it occurs? I'm thinking of, you know, jury's in the box, judge comes on the bench after the lunch break. Somehow the door to the courtroom got locked inadvertently. Witnesses on the stand, five minutes of continuous testimony goes on before someone realizes the door was locked. They go and unlock the door. I mean, is there a triviality exception or is your position that under that hypothetical, it's game over, retrial, do it all over again? Is that what this right to a fair, a fair and public trial requires? Is it, is it that unyielding? Well, I think it's case by case. In the example your honor offers, I think the inadvertent nature of the closure would be significant in deciding and it might well be that it could be held that that doesn't implicate the right. There is case law that identifies inadvertence as a factor going to whether there was a closure in violation of the sixth amendment. But in terms of triviality more broadly, all right, before you get to triviality, let me, let me push you a little on inadvertence because here this seemed to be sort of a, it seemed accidental or inadvertent. I mean, this was a COVID case. It's weird. The judges, they're piping the case into courtroom seven B. Um, I mean, there was nothing intentional or untoward about this, this to the extent there was a closure. Isn't it just a glitch in the system during a COVID trial? Well, if it was a glitch, it was a glitch on the part of the judge presiding out of court herself. Uh, the inadvertence case, it's Mr. Dunham, let me ask you another question here. On this point, uh, what's the distinction between this and a sidebar, uh, courts hold sidebars all the time, right? And I, I, in our briefing, we allow that sidebars are permissible. The distinction is that the point of a sidebar is to facilitate presentation of the case without excusing the jury. And the law has developed that essentially that's always a good enough reason provided it's a matter. So brief and relatively uncontentious that it can be resolved at a sidebar. Also the sidebar does take place at least within the line of sight of the public. So public can see how contentious it is, can see how the judge is responding to counsel, but generally speaking, I would suggest sidebars and quick chambers conferences that are conducted to keep the jury in the box are permissible. So let me, I'm sorry. I cut you off. You were addressing the triviality. Is there a triviality exception? And if so, what are its contours? I don't, there's not an exception that's so doctrinally formed that I can give you contours, but this is what I'd like to advert to the Robinski case about because they said, well, you have to consider the public trial right by looking to the connection between the subject matter of the closed proceedings and the merits of the case and the integrity of the administration of justice. So looking to broad factors like that, maybe you would also consider things like how contentious the issue was, whether identifiable members of the public were excluded, the degree to which the proceeding was one that would have been readily intelligible to the public. But I think it would be case by case. And there are some closures that would be too minimal to implicate the sixth amendment. This is, this was a, why does this case fall on the other side of the line at stake in these proceedings was a line of cross-examination going to potential bias on the part of two police witnesses whose credibility was essential to the prosecution, what was the whole controversy before the jury? Again, I, it didn't, it wasn't admissible though. I mean, it's, it's, it's the kind of stuff that judges are required to not let juries hear. Um, and if the judge is required to not let the jury hear it, why should the judge be required to let the public hear it? I mean, wouldn't it, couldn't it, couldn't it do great harm because it could give non-lawyers in the public, the misimpression that the court is hiding something. I mean, when the, a lot of these legal rulings on evidentiary issues are, are, um, they require legal training to understand even why the decisions are being made. So I could, I could see it almost harming the fairness and integrity of the proceedings for the judge to have the public here about these very serious allegations. If those serious allegations were not admissible at trial, well, if there is some overriding interest in closing the courtroom, it's well established that the six minute right's not absolute, but the court must make that determination before closing the courtroom, but it must consider alternatives. There's nothing like that here. I mean, the government has insisted on keeping things confidential, but it's never articulated rationale for doing so. And although even granting for the sake of argument that this, this was, would have been error to admit this evidence, that's a standpoint we get from the federal rules of evidence, but it's really not the relevant standpoint for what the public should know. And if legal rules do strike the public as hiding things and unnecessarily restrictive to evidence, the public will ultimately, you know, would act politically to reform the system. I mean, the whole point of the public trial, right, is that it permits the public to act as a, a check on the judicial process on that way. It's actually essential to our system of self-government. That's the Globe newspaper company. If you assume for the purposes of the question that the remedy would be not a whole redo, but just the hearing that was closed, then how does that affect the triviality exception or the prong for integrity analysis? Well, I guess I, I would say if one thinks that it would remedy this situation simply to redo the hearing, it would tend to say there's really no need to grant relief. I mean, I agree that wouldn't be a very meaningful proceeding, but I think it would not be a meaningful remedy. It would not be as, as Waller commanded a remedy appropriate to the violation because since the trial had been done, the public would never get to see the trial in light of the evidentiary ruling to play its role as a check on the case. But didn't Waller also say that a new trial is generally required only if the public proceeding leads to a materially different result than its sealed predecessor? That's what it said about course of proceedings to follow on remand. And if the suppression hearing that was going to be reconducted there led to a material change, there would also need to be a retrial, but suppression hearing is a very significant type of proceeding, but very different from the kind of proceeding here in that it's usually a self-contained proceeding usually takes place substantially before trial. And typically it ends up resulting in trial, not going forward either because evidence is dismissed or defendant may plead guilty. So it's meaningful. It's often case dispositive. Exactly. And we have the opposite here. We have a sidelight that didn't even yield admissible evidence. But in no sense did Waller say the reason this has to be redone is because it's case dispositive. I'm suggesting its independent nature makes it intelligible to redo the suppression hearing alone. Here, there's a similarity to Waller in that there were allegations of police misconduct and Waller emphasized the public significance of airing such allegations. And in fact, you know, the complaint at issue did sustain dereliction of recordkeeping on the part of these officers. We don't have the complaint, so we don't even know if there is additional information that might be viewed to give it an issue of reliability. Does it matter that they were, that the officers in question were backup officers, not the ones who actually pulled them out of the car? Your Honor, they were not backup officers. That's an incorrect characterization that the district court made. The public should have seen it because it ended up not being borne out by the facts that were introduced at trial, which also didn't bear out the prosecutor's representation that these were backup officers. This was a team of four officers. They set off together to conduct intensive patrol. These two officers, it's true, did not decide to make the stop, but they participated fully in the stop once it was made and the arrest. And you know, in some instances testified that they recovered evidence essential to the government's case. Thank you, Mr. Donohue. We'll hear you on rebuttal. Thank you, Your Honor. Ms. Martin. May it please the court. Ashley Martin for the government. Your Honors, I'd actually like to start with the timeline in this case. It was actually the defendant's 11th hour request in this case that led to the hearing and the alleged first closure, which, as Your Honors pointed out, we do not agree was closed by any stretch. That was a sealed proceeding, a transcript sealed after the fact. And this judge, a 25-year prosecutor, certainly knows the difference between closing a courtroom and sealing a transcript. But what happened on the morning of jury selection, page 67, the defendant said, is Officer Stout coming? And he said, I want to talk to him about police misconduct. And the judge said, you need to speak to your lawyer. And then it turns out that the defendant had eight pieces of paper, form letters from the district attorney's office, indicating that Officer Stout and Rosinsky possibly had an open misconduct. That was the information. And at the end of the day, that same day, copies were provided to both counsel. That led to the ex parte communication at 9 p.m. that evening. I had reviewed that paperwork well in advance of trial. That allegation, the racial profiling allegation, was investigated thoroughly by the police department and determined to be unfounded one month before this defendant was ever arrested. The district attorney's office shouldn't have even made the disclosure that it made. So you're saying the federal government had no obligation to turn the information over in the first place? Absolutely not. Because you knew it wasn't Brady material or Giglio material? Correct, Your Honor. Which is what the judge also... So why did the judge even delve into it, just out of an abundance of caution or to overreach? It was the judge. Did the judge explain that? I don't remember. Well, I think if you look at the record as a whole, Your Honor, this defendant, he held the government to its burden of proof, which kind of dovetails into issue two. He went down to see how the jury pool was selected.  We took forfeiture to the jury. I think that Judge Marston was trying to make sure that the defendant understood every aspect of his trial. He was complaining that he received misconduct paperwork. The judge wanted to show him in open court, and later sealed the proceedings, but in open court that we weren't hiding the ball, that he was receiving a fair trial. And she determined that that information was not Brady or Giglio and didn't need to be turned over to the defense. So what evidence do you have that the video stream was actually on during the first proceeding? Your Honor, I think the absence, because we're on plain error review, it is the defendant's burden. I think the absence of evidence shows that the proceeding was over. Well, they have evidence that was sealed. So they're just asking the court to draw an inference from the fact that it was sealed. And that seems like a pretty strong argument, doesn't it? I understand, Your Honor. No, I don't believe so. I mean, I was there. I mean, it was the morning of openings. I don't believe it was. Other than that, what could what evidence could they deduce, an affidavit from somebody in the other courtroom? You could you could remand for that affidavit and we could prove that it was open, but there's no evidence in the record. And that's the defendant's burden. It goes to whether or not the error in this case is plain, which is a second prong. And also, you can see the second one was closed, right? Absolutely. All right. So regardless of whether it's one or two proceedings, are you conceding the error was plain and you're just staking your case on prong four of Olano or are you you're arguing that it wasn't plain? Your Honor, I'm arguing there was no error. I'm arguing that the public trial rate does not extend to a 15 minute, a 15 minute closed proceeding on a collateral matter that had absolutely nothing to do with the evidence in the second. That's the second closing. It is. But if the first, if the first one was closed, it could have been an evidentiary issue. It was an evidentiary issue that if it proved that it was an open investigation on either racial profiling or something else, it could have been something that was used to cross-examine the officer at trial. So why wouldn't the why wouldn't the public right attach? You're you're you're right, Your Honor, that it could be something that the individual was cross-examined on. And I actually brought it out on direct that there was the there's the second open internal affairs investigation that had to do with failure to call a supervisor to the scene. I questioned the officer on direct examination and brought out that fact. But the underlying substance of the allegation is not relevant at that point. It's it's the fact that he would have an open investigation. It's the attempt to curry favor that could weigh on his credibility. And that was already being brought out at trial. It was brought out at the suppression hearing and it was explained at the suppression hearing, which is contained in the record. I apologize, Judge Hardiman. Let's let's get back. Let's assume for a minute that we disagree with you that the first proceeding, they have carried their burden to show the first one was closed. It should have been open then. So we go to that's error. So why is it not plain error? Your Honor, I will get to the second question. But as to the first, I would disagree that it's error, even on the first proceeding, if it was, in fact, the right didn't attach at that point. Your Honor, it was a ruling on an ex parte communication. The judge should never have even ruled in open court or discuss the ex parte. Should have been handled like a sidebar in chambers. Yes. The only case law do you have to support that argument? That it should have been handled in chambers. Yeah, she made a mistake handling it. Yeah, well, there's you're essentially arguing that she gave them more government in the sunshine than they were entitled to. It could have been done in chambers with a court reporter. Correct, Your Honor. The first, second, fifth and eighth circuits have all decided in situations that are somewhat similar to the one at hand that the public trial right does not attach to these extraneous hearings, specifically with regard to the First Circuit case Vasquez. That was an offer of proof hearing that the judge had where she called in two witnesses. The defendant wanted to call a trial and heard them out. She specifically said this isn't part of the trial, but I'm going to make a record on appeal to support my decision. That's what Judge Marston did in this case. She made a record on appeal and she also explained it for the benefit of the defendant in that moment. What was presented ex parte and why she was ruling it irrelevant because it was clear the defendant was struggling with that. I don't I don't know if we want to create a rule that prevents a judge from making sure that the rulings are fully and clearly explained to to a defendant. But you can see that if it had that hearing that you claim didn't need to be part of the public trial, if it had yielded admissible evidence, then, of course, that would have had to have been presented in a public trial. That's where we should draw the line, according to you. As to whether or not the evidence was relevant? No, I mean, if if if the decision on relevancy had gone the other way, then it becomes part of the trial and that has to be open to the public. Correct. I understand. I think that Waller teaches us that the defining line is the trial like nature of the hearing, which goes to your honor's point. If it involves evidence that's crucial to the actual trial and could affect the outcome than the public trial right attaches. Necessarily. No. Until you get into the hearing side and decide it. Yes, your honor. And that that's a fair point. It could be. But in this case, I guess what we're struggling with, I think Judge Porter and I are on the same page with this that you called it an ancillary proceeding. I think I called it extraneous when I was questioning Mr. Donahue. But to Judge Porter's point, the reason I called it extraneous was because there was a decision that no admissible evidence was was forthcoming. If it if it had been the inverse and it's not extraneous at all, it's very important to the flow of the trial. So what's your definition of an ancillary proceeding? We know that suppression hearings need to be public. How do we know where this type of, quote, ancillary proceeding fits in? I think what does it mean to call it calling it? I guess what I'm challenging you on is calling it an ancillary proceeding can't suffice to take it out of public view. Completely agree. I think it has to go to the substance of the hearing and the nature of the hearing. But you have to take a step back and look at what the Supreme Court said. The right of the public trial applies clearly to the proof of trial, to jury selection and to suppression hearings. What the other circuits have found, including the Eighth Circuit and Smith versus Titus, which was the Supreme Court just rejected certiorari. That was a motion in limine where it was the extent of cross-examination of a prosecution witness and the judge ultimately denied the defendant's motion. And that was over the defendant's objection. And the Eighth Circuit said, and granted, this was in the EDPA context, but the Eighth Circuit said that reasonable minds could differ, reasonable jurists could differ as to whether or not the public trial right applies to anything other than the three prongs that the three types of hearings that the Supreme Court has clearly delineated, which goes to the plainness of this error. If this court were to even find an error, both the Eighth Circuit and the Second Circuit, and that's in Jordan versus Lamana, they both found that reasonable minds can differ, that the Supreme Court has not expanded the case law beyond those three areas. Have you given us all the cases that you have in mind in your brief? I believe Jordan versus Lamana, Your Honor, that is a 2022 case that's recent. It's it's 33 F 4th 144, but it does rely on Smith versus Titus. If there are no further questions, I'll yield my remaining time. Judge Fischer? Yeah, I don't have any further questions on this point, but I would just like to ask one question about the admission of the certified copy of the prior conviction. That certified record, that 15 page document that was admitted, couldn't have you proven what needed to be proven about the prior conviction in his knowledge by providing less information to the jury on that point? Your Honor, if I if I understand your point or understand your question, it's it's whether or not I needed the amount of evidence that I put in via that certified record. Is that accurate? That's correct. So I think Ray Hayeef changed the landscape for 922 G cases and the elements that we need to prove, proving knowledge of any individual's knowledge in any given moment is incredibly difficult absent a contemporaneous statement from that individual. Showing that someone had been convicted of a crime 13 years prior, a serious crime, being robbery, and that he was sentenced to 5 to 10 years increases the likelihood that that individual remembers that conviction and was aware that he had that conviction at the time of the possession of the gun in this case. I'd also note that the judge did limit my proof. That record also contained the statutory maximum that the defendant was subject to, which was more than 50 years. That did not come in, nor did any of the facts related to the underlying conviction. But Ray Hayeef has changed, has changed the field and has changed. Didn't the certified copy of the record that you submitted also contain the additional charges that on which there was no conviction? Wasn't that included in the certified copy? I believe that part was redacted out, the charges that were dropped. The conversation you may be referring to, your honor, with the fingerprint card, which was the initial fingerprint card when he was disputing his identity, that showed all of the charges that he had been charged with. But what actually went to the jury and what was read out to the jury is what's included in my brief. Okay. All right. Thank you. Can we go back to the public trial right for a second? Assuming we get to prong four, just tell us why we shouldn't notice the error on prong four. Or if we do, what would be the appropriate remedy? You should not notice the error on prong four. This is not the case to notice the error. The court has been extremely clear in Puckett, and this court has also cited it as well, that discretionary relief under prong four is strictly circumcised. Or yes, circumcised. Circumscribed. Your honor, it is an independent fact. We usually have arguments in the morning. It's an independent fact specific inquiry. And if you do it in this case, and your honors, you made the point to Mr. Donahue, there's no point in redoing these hearings. They had no result. They had no bearing on what actually occurred. It's completely different. Your friend says we don't do the hearing. We do the whole trial. Your honors, I obviously disagree with that. And you pointed out, Judge Porter, the quote in Waller. It's absolutely, the remedy needs to be appropriate to the violation. In Waller, they said after a seven-day closed suppression hearing, you need to send it back and redo the suppression hearing. If there's a different outcome, then possibly, if that affects the evidence and the proof of trial, then you can come back and you can ask us for a new trial. And this court also cited that with approval in Williams. Your honor, I would ask you to deny relief in this case. Thank you, Ms. Martin. Rebuttal, Mr. Donahue. Your honors, if I can quote my colleague, she said the judge in the first conference was trying to make sure that the defendant understood every aspect of the trial. The public equally has a right to understand every aspect of the trial, to the extent the proceedings make that clear. And the public has a right beyond that to evaluate the propriety, the skill, the motive of the judge in conducting these proceedings. I'll tell you to this day, it's not terribly clear to me exactly how all the complaints came in and came out. It's not accurate as was represented that this was cleared up at the suppression hearing before trial. So this was something for the public to judge. This is the quality of the administration of justice that was being decided here. There was some exchange about extraneous or ancillary proceedings. The government is, first of all, citing to EDPA cases about what the law holds or doesn't hold, so not cases that control this court's de novo, as it were, decision as to what the Sixth Amendment requires. And what the cases do hold, what the Supreme Court held in First and Press Enterprise Company, is that there's a presumption of openness. And I say the court held that, but really that's something our legal tradition has held for centuries, that courts of law are courts that proceed in public. Proceeding publicly is part of what makes them courts of law. So to suggest that the right only applies to a motion to suppress and jury selection is not an accurate characterization of what the effect of the Supreme Court decision. It reads the decisions too narrowly, I must admit. I would note that today is the first time the government has submitted that if the first proceeding was closed, that was not Sixth Amendment error. And so I believe that that position has been waived on the part of the government. Its briefing does not take that position. On the second issue, the submission of this excessive information concerning the prior conviction, I would just like to state as succinctly as I can what we think the rule should be, which is that the government was entitled to present a state court record showing that my client had been sentenced to a term of years, and that when a jury learns the defendant has spent some number of years in prison, he will recall that and he'll know he had been convicted of a crime punishable by more than one year. That doesn't necessarily follow though, right? I mean, a defendant could get on the stand and say, you know, I was on drugs or I don't know, early onset. I mean, there are all kinds of excuses a defendant could make to try to rebut that charge, right? If he chose to take the stand. Right. If that happened, the government would be free to offer rebuttal. If the defendant placed it in controversy, I would say at that point, old chief's out the window, right? And the government can show whatever it must show to counter the defendant's testimony. Here, of course, the government knew my client was going to testify that he knew he'd been convicted of a felony. He did testify to that effect. And even so, we're not contending the government was barred from presenting any evidence at all. In its case in chief, we submit it could have presented evidence. He'd been sentenced to a term of years. If he'd taken the stand and said he had dementia or he had a cognitive impairment, that's when the government could have, in rebuttal, come in with more details, tending to disprove that testimony. But if he doesn't, if he does, I mean, there's a fail safe way to avoid this and that's to stipulate. If he doesn't stipulate, then why should they wait until rebuttal to put in the good stuff? Just put it all in because he didn't stipulate. He could have avoided the whole thing by stipulating. Well, old chief never contemplates that there's a stipulation rule. It's whether the defendant will concede facts that establish the elements. The government had noticed that defendant was going to do that here. So the proof. No, but after one of the elements is that he knew and he didn't stipulate to that. Well, what he, so that I believe the judgment said sentenced to not less than redacted years nor more than redacted years. Doesn't mean he knew. One would suspect that he would have known or, but it doesn't definitively establish it, does it? I believe, you know, between old chief and Rehaeth and Greer itself, the Supreme Court has said juries will find a defendant knows. It used to be if they just get. Well, yeah, I remember when the court wrote that and I took that to mean the court was predicting why the sky wasn't going to fall after Rehaeth, but, but just because the sky isn't going to fall, the juries are usually, or almost always going to find it doesn't mean that it was established. In fact, it's just predictive that that's usually what's going to happen. The government still, the government is still put to its proof, right? Right. And I think I'm suggesting the government's allowed to put in even more than, than Greer said. I mean, Greer said felon status is not the kind of thing one forgets, right? I'm saying that goes a little far, but being in prison for more than a year is not the kind of thing one forgets. That's the government should have been able to put that in. And had anything gone awry in my client's testimony, it could have come back robbery five to 10 year sentence. But there was no need for that here. And it tainted the deliberations of the jury. Thank you, Mr. Donahue. Thank you, Ms. Martin. We'll take the matter under advisement.